Please the Court, Counsel. My name is Janet Schraer and I represent the Defendant Appellant City of Woodburn. This appeal presents to you the question of whether the City's post-offer pre-employment drug and alcohol testing policy enacted by the City and enforced against plaintiff in her application for a position as a library page amounts to an unconstitutional search and seizure under the Fourth Amendment of the Federal Constitution in Article I, Section 9 of the Oregon Constitution. Procedurally, the background of the case is unusual in the way it presents to you on appeal. There was a summary judgment motion, cross-summary judgment motions by the parties on the liability issue on what at that time was plaintiff's facial challenge to the constitutionality of the statute. The Court issued a written opinion about the situation and upheld the granted the plaintiff's summary judgment motion and denied the defendants. And hence, the case went on to the damages portion of the trial a number of months later. Subsequently, a damages verdict was issued and then a declaratory judgment action was issued at the request of the plaintiff. An injunction request was withdrawn. Therefore, an injunction was provided and then a damages award was made. In the closing argument portion of the damages trial, which occurred in March, whereas the summary judgment grant occurred in November, the plaintiff for the first time, in questioning by the Court about the nature of the declaratory judgment to be entered, stated that they did not wish the Court to enter a judgment as to the constitutionality of the statute of the city policy overall, but they were simply seeking a declaratory judgment as to the application of that policy to plaintiff in her position, which was a part-time library page at the City of Woodburn. And so we're here to discuss with you the constitutionality of the policy in question, but it is our view that the challenge in question is an as-applied constitutional challenge, not a facial challenge. A facial challenge requires the plaintiff to show that there are no circumstances under which the statute can be constitutionally applied. And that was simply, A, it was simply not demonstrated here, nor could that be demonstrated here under the circumstances. You'll see in our policy booklet there's all kinds of different provisions. There's truck divers and a number of different kinds of things where there have been cases in the past that clearly have permitted drug testing for those, pre-employment drug testing for those positions, and even random employee drug testing under those positions. And so plaintiff did not argue that it could be applied to every, that there's no position to which it could be applied, and nor can they make that argument. What their position is, is that they reverse what the facial challenge is. They read it incorrectly and rely on a federal district court case out of the Southern District of Florida for the position that a facial challenge requires only as showing that there's some instance in which the application of the policy could be deemed constitutional. And if there's any way, any application to any one employee in which it's unconstitutional, the whole thing goes down the drain. And that's simply not the way the U.S. Supreme Court has articulated the policy. Facial challenges mean it can never be applied constitutionally, and then if you get past the facial challenge, the question is, and what ought to be before you here, is the as-applied challenge, is it unconstitutional as applies to plaintiff in her specific job description position. On the as-applied issue, if I have it right, you, or Woodburn, argues that it has, it has a significant interest in screening pages at the library because drug abuse is one of the most important and serious problems facing society today. Two, because of an adverse impact on job performance. And three, because of the interest in protecting kids from, you know, the influence of illegal drugs. And my question is, where is there any either factual or legal support for those interests? Sure, society has a big problem with drugs, but if that's a sufficient justification, then every government employee, prospective government employee, could be tested. And the Supreme Court has indicated in Chandler that at least candidates for office, that kind of prospective government employee, can't be symbolically tested to show that the community is opposed to drugs. On your second point, adverse impact on job performance, best I can tell, there was one problem in more than 20 years with one employee who had to go to rehab twice in the experience of the acting head librarian. And three, with respect to protection of kids, sure, a page at the library may upon occasion have to spend an hour at a desk where kids are in the vicinity, but it's a relationship that strikes me as being very, very different from a school system where a teacher has direct in parenta locus responsibility for supervising and giving moral and other instruction to children, which I don't see in the case of the library. Now, that's a long-winded speech, but I wanted to get it out because those are my concerns, and I would appreciate it if you could address them. Thank you. I appreciate that. In this case, I have to say, this isn't the strongest record. This was not developed because it was a facial challenge in the first instance, and plaintiff only at closing argument on the damages part of it switched and decided it was an as-applied challenge that we were talking about, and that's all they were asking for. So the parties didn't proceed as one would expect in a case in an as-applied challenge, and so there wasn't as much focus, perhaps, as there could have been in the trial court on the particular positions, but it's our position that as a matter of law, there is sufficient information in the record before you to uphold the constitutionality of this policy as to the part-time library page position. The testimony is that there was concern in discussions among the folks passing the policy that department heads expressed that there were employees that had drug and alcohol problems and that attendance and performance time off of work was a problem. That's what's on the deposition, that that person was required, had drug and alcohol problems and was required twice to go to rehab. And on the part about supervising children, we have the policy that states those are deemed security-sensitive positions. What does that mean? I mean, there's no definition of what it means. I mean, you can step and say, well, it's security-sensitive. It isn't self-evident to me that being a, you know, a high school student, which a page could be, as a part-time job, is security-sensitive at a library. I mean, maybe if she were working as an intern at a nuclear power plant, yeah. Well, the record contains more than the fact that it was deemed security-sensitive. There was developed in the record discussion about what exactly the page position entailed with regard to time alone with children. And the concern, the reason all library positions were deemed safety-sensitive, and it's stated right in the policy, is because they have time, unsupervised time with juveniles. So the concern of the city, as written in the policy, is to have protection as to the individuals who are dealing with juveniles unsupervised. And then there's further information in the record about how much time the page spends, would anticipate a library page in part-time position would spend unsupervised with children. And the record shows they would spend time supervising the children's book area and staffing the youth services desk for as long as an hour at a time alone or unsupervised with children. The record also contains references that juveniles often come to the library unsupervised, in other words, without adults, and would be interacting with the library page for perhaps as long as an hour in an unsupervised context. Well, granted, it's not like a bull at large on drugs in a nuclear power plant. The right to protect our children against employees who are on drugs or alcohol is something that ought to be protected and ought to be held up to the level of substantial interest of a city. That is the record. And whether we go back and develop it, I frankly don't think it's going to change. That's what it is, and we're asking you to recognize that that is a sufficient type of interest of a city to be able to have this kind of pre-employment test. That is what it is, and I frankly, it's not, there are stronger safety positions, but we think it ought to be in this society, in this world, and the U.S. Supreme Court has mentioned over and over again that a drug problem is something that is endemic in society today and ought to be addressed. And while there may be cases in which it's more strongly shown that drug and alcohol could be a problem, as we know from the kind of lawsuits we see all the time, it doesn't take even an hour for a person on drug and alcohol, alone with an unsupervised child, to cause a very big problem. And so we think it's a legitimate interest of the city to deal with. Aren't you asking us, though, to expand the law? Like Judge Reimer said, when you're dealing with children, it has to be, they're in your sole custody control, and you're looking out for them like teachers or school administrators, and a library assistant doesn't rise to that level. So aren't you asking us to go beyond what the current authority is? No, I don't think so. Because the current law, well, there are school cases, and the school cases, the Vernonia case and the Earls case, they do employ a different standard for schools because schools are deemed in loco parentis with the children and have a higher level of a duty to protect these children, and there's less Fourth Amendment scrutiny of what you do in those cases. However, I think this falls into the rule that's expressed in Chandler in the other cases, the international chauffeur cases, that simply say when examining the Fourth Amendment search and seizure provisions, a city's interest can, if you have a substantial interest and the plaintiff has a minimal privacy interest, that you can have warrantless suspicionless searches. It doesn't, it's, there's no case on all fours. But I don't think we're asking to expand the law in that way. We're simply asking to apply the current law to the facts of this case. The other part of the question is... If we were to say, if we were to agree with you and say as a matter of law that these library pages, that this policy is appropriate for library pages, what city positions would not be subject? I'm thinking of secretary. Secretary. Perhaps a janitor. At the library. At the library. Probably none. I think their policy is probably appropriately written, all library, they have all parks and recreation department people, and I bet that includes high school kids and everyone else. Because, again, the unsupervised time with children. That's our position, that's what our policy says and that's what we're asking you to do. There's probably positions, like I said, secretaries and other kinds of more clerical people, maybe somebody who's always in a back room filing behind somebody's office or something that never gets out and open in the public where children are. But we know in the library children go in from this record unsupervised by their parents. And so that's what the policy says and not only the part-time pages, but everyone else is and ought to be covered by that policy. The other thing that you look at in balancing and determining whether the Fourth Amendment right is violated is not only what's the city's interest, but what's the plaintiff's interest in privacy under the circumstances here. The case is recognized that a pre-employment situation like this one is less intrusive than someone who's required to undergo a test when they're already employed because they can choose to apply for the position or not. The intrusiveness of the actual test itself is another thing you look at. Plaintiff hasn't made that an issue or discussed that as a concern of theirs and the district court refused to consider that as an issue because they didn't raise it. And we'd say the same thing, that there's no issue about the intrusiveness of the test itself. But the third thing that you should look at that's important here as well is what other kinds of things are there that would have reduced this person's expectation of privacy. And in this case, for the part-time library page, again, because they're safety-sensitive position or security-sensitive, they were required to undergo a full-blown background investigation of their personal and job history. And that's the kind of intrusiveness or background that has been found to reduce the party's expectation of privacy under the circumstances. And you'll see in this policy, this plaintiff was required to undergo that because of her application for the safety-sensitive position. So all the factors that go into the plaintiff's expectation of privacy under this circumstance point to the direction of finding this constitutional because she had minimized interest in privacy under these circumstances. I want to talk just for a minute. I just want to spend, I guess I'll reserve the balance of my time unless there's any questions. I think I'll reserve the balance of my time, I'm sorry, for the rebuttal. Okay. Mr. Wilker. May it please the Court. Stephen Wilker. I'm here as a cooperating attorney for the ACLU Foundation of Oregon on behalf of the plaintiff, Jan Lanier. And I apologize, I'm getting over cold, so my voice may go in and out. Ms. Schraer's presentation is all well and good, but it turns what happened in this case on its head. And I know what happened in this case because I was the trial lawyer. This case was argued on liability on cross motions for summary judgment. Not once in that process did the defendants ever raise an issue about Salerno, about this not being a proper facial and as-applied challenge. And it's always been both. This is simply an argument that didn't appear until we got on appeal. And that's important. But more importantly here, our argument isn't that the city couldn't have a policy. That if appropriately limited to a special need, as defined in Chandler and some of the other cases, might not be constitutional as applied to a plaintiff. And if it could be as applied, then it wouldn't be facially unconstitutional. But in fact, that's not the city's policy here. In fact, the city adopted a policy, and in adopting that policy, they specifically struck out the language that this testing should be only for people in safety-sensitive positions. That was what was in the draft, and they struck it out. As a matter of fact, the facts here are that the city adopted this policy because they thought it was a good idea. They had the laudable, symbolic idea that cleansing the city of drug use was something that the city ought to stand for, and therefore anybody who applies for a city job ought to be subject to this testing requirement. And that's all well and good, but that's precisely the kind of laudable goal that Chandler said is simply not enough. It's simply not enough. And because the way they phrased it, that everyone is subject, and it doesn't limit it to everybody who's in a safety-sensitive position is subject to it, it is facially unconstitutional. It's facially unconstitutional because there is no set of circumstances under which every person who applied for a city job. That's not the question. It's not every person. Is there any set of circumstances under which it could not be constitutionally applied? And it's in – is there any set of – That just can't be so. What I'm saying is, is there a set of circumstances under which this policy, this policy doesn't delineate. If we were here arguing, if this policy had said what it said before they struck out the language, and then we were here having a fight about whether or not every position in the library was safety-sensitive or the position of Library Page was safety-sensitive, I would agree that the policy itself was not unconstitutional on its face. But here the policy is akin to a policy that required every person who entered this courthouse to provide a urine sample. There might well be some people who could constitutionally be required to provide a urine sample. Someone who was a convicted felon on post-conviction supervision might well have appropriate condition of release that made it constitutional to require that person to give a urine sample. But that possibility isn't enough to make a policy that says every person who enters this courthouse has to give a sample a constitutional policy. And it's a fine line, but it's an important distinction here. What case do you have anywhere, except Barron, which is wrong, that supports the standard you want to impose? I can't find a case that – I was not able to find a citation other than Barron that the question wasn't whether a – this policy by its terms purports to apply to everyone. And because it purports to apply to everyone, there has to be a circumstance under which everyone at some level could be subject to it. This isn't a situation No, someone. I mean, as long as it could be constitutionally applied to someone, and I can come up with a bunch of city employees to whom it might arguably be perfectly proper to apply it, just not to a page at a library, in my view. But under Chandler v. Miller, the standard is, is there a special – in order to have a program like this in the first instance, you have to have – excuse me – you have to have a special need that justifies the suspension of the warrant requirement. And this – because this policy is adopted without regard to any such requirement, the policy itself is unconstitutional. If it were a matter of the policy simply being wrongly applied because the policy said there's a special need for this and that's what we're fighting about, we respectfully submit that Salerno shouldn't be read to go so far as to make it possible to have a broad enactment or a broad policy of this kind simply because it's conceivable that there is some person that it could be applied constitutionally to if they had done something additional to render it not subject to a facial constitutional challenge. The Fourth Amendment is a fundamental right of the plaintiff not to be subjected to a warrantless, suspicionless search, and that's what the city attempted to accomplish here. I'll move on because I think it's clear that even if the Court disagrees and thinks there is no facial challenge, this is not an argument that the defendants have preserved. The defendants did not make a Salerno argument. They did not argue at the trial court that this was an improper facial challenge because there was a set of circumstances under which this statute could constitutionally apply. More importantly, on our as-applied challenge, Judge Rimer, you pointed out in Ms. Schraer's comments the tenuous connections that they're seeking to create here to support their the Court points out because the policy that Ms. Schraer talks about in terms of what's safety-sensitive or security-sensitive isn't this policy. It's a different policy. It's a policy about as to what employees or applicants we're going to do some kind of background check on. And for those who are deemed safety-security, the city says we're going to do a background check on those. And that's the portion of the city manual that's at issue with regard to identifying library employees as safety-sensitive. The city here never argued below that that provision somehow justified the drug test because they defended the drug test on the facts under which it actually were adopted. That, in fact, it was adopted for the laudable goal that we think it's a good idea, that the city managers, including library director Sprower, thought it was a good idea. And that's why it was adopted, and that's why this argument is new on appeal, because it wasn't, in fact, supported by the facts that were developed below and submitted below in the record. The issue on safety-sensitive and background check was a different claim. It was a claim we lost on below and didn't appeal. But it's not the claim that's before the Court now. That was a Fifth Amendment claim. Our Fourth Amendment claim is based on the drug testing policy, and that policy itself does not distinguish. So what's wrong with having a policy for these pages who are in the library that may well have contact with young children, adolescents, let's say, teenagers? Well, one, you'd have to say, what's the fact-finding that supports that policy? I think the best example is the Sixth Circuit case. It's Knox County. It's cited in the briefs and discussed. But in that case, the school board did an analysis. They justified their program. It went to court, and the court didn't just rubber stamp it. The court went through a fact-finding to determine, was there, in fact, a factual basis to support a carefully tailored program that those folks should be subject to screening? If you don't require that, what you've basically said is a policy that was adopted just because some folks thought it was a good idea can be rationalized on a post hoc basis simply because a library page might have contact with children when, in fact, there was no history of drug and alcohol problems at this library. There was one employee over a long period of time. There was no discussion as to this aspect of it, that library pages have some This is not, and to distinguish it, present employees weren't subject to the test. Present employees were subject only to reasonable suspicion testing. There had to be some suspicion before you could demand a current employee to take a test. This was a blanket, across-the-board program that applied to all employees without regard to what their position was, what the specific job responsibilities were, how and what interactions they might have with unsupervised children. There were so many gaps you have to get to that if you support this, you've essentially eviscerated the requirement that there has to be a meaningful connection and a meaningful requirement. These aren't folks who are operating heavy equipment. These aren't folks who are on the front lines of drug interdiction. These aren't folks who are charged with taking care of our children in schools and local These aren't folks who are operating trains or driving trucks on the highways. This is folks who are working in a library. If you don't require a level of analysis, you've essentially eviscerated the requirements that Skinner and Von Raab require, that Chandler reinforced. You've essentially allowed the government to make a symbolic choice, the choice in fact that was made here by the city of Woodburn, the symbolic choice to require drug testing. There's an argument that's made in reply that the unconstitutional conditions provision portion of our brief adds nothing to the analysis. I want to address that. It is an unconstitutional condition when you say to a prospective employee who's been trying to give up your Fourth Amendment right in order to secure the job. And I wanted to point to the court to a case that we did not cite in our brief, but which I believe is on point on this very issue. It's an opinion that Judge Kaczynski wrote and issued in June of 2006. And it's the United States versus Scott. It's a 450F3863. It's actually a case arising in the context of suppression. And it was a case involving the rights of pretrial releasees who have been charged with a crime but not yet convicted. And the court made it very clear that in that circumstance you can't condition the right to pretrial release on consenting to a warrantless search. That someone who's simply been charged with a crime isn't in the same situation as someone who's already been convicted of a crime. And that that in and of itself is not a sufficient basis. You can't condition release on giving up that Fourth Amendment right. So it addresses that argument. But more importantly, it goes beyond that and talks about Chandler and how Chandler requires a special need. And the need has to be, there has to be a relationship between the need addressed, the need specified, and the need addressed by the testing regime. And in this case, there is no such connection. There's no connection on the facts and there's no connection on the law. And with what the record here, as counsel acknowledges, is not the best. That's because there was no factual basis for this testing program. This testing program was done because they thought it was a good idea. I wanted to address one last issue, which is this issue of there being a concession. Having been the trial attorney who was arguing, making the argument, I can tell the court that I did not intend to concede anything by nature of the argument that was made. But the colloquy demonstrates that I was merely responding to the court's concern on issuing a declaration as to the appropriate scope of relief that the court not preclude the city from if it chose to and if it used appropriate checks and appropriate fact-finding from adopting what might be a constitutional policy. Mr. Wilker, on the declaration, I'm having a bit of trouble understanding what the declaration declares. And it seems to me to basically be a recitation of a contract proposition of law. I mean, if something violates the law, well, then it violates the law. Would it be acceptable, would a declaration that said that the Woodburn policy, as applied to your client, is unconstitutional suffice for your purposes? Well, certainly our primary goal here is representing this plaintiff in obtaining a declaration that her constitutional rights were violated. Well, that's indeed what you represented to the district court, which they're saying was a concession. That's precisely what you said is, look, Judge, what we really want in our hands is a piece of paper that says this policy is unconstitutional, is applied to an error. And that is our primary relief we seek. Right. We believe that it's also appropriate for the court to declare that this policy is unconstitutional because it does not include the kinds of safeguards that Chandler v. Miller and its progeny require. If in case you don't succeed in getting that, then do you have any problem with a declaration somewhat along the lines that I suggested? Certainly not, Your Honor. Our preference, obviously, would be for a broader declaration. But our goal here is to vindicate the rights of this plaintiff who had this policy unconstitutionally applied to her. I think the court below was concerned that it not preclude the city from doing something that would be constitutional. And that was the point of the colloquy. And the court's attempt to include those provisions in the terms of the declaratory relief. Well, I mean, do you have a suggestion as to what the declaratory relief actually means? I'm sorry, Your Honor? Can you suggest to me what the declaration as entered actually means? It means that this policy is what is and was unconstitutional because it failed to account or provide for a special need justifying it. Well, then that makes what we do with it easier. You read it to be a declaration that the policy is unconstitutional on its face. Unconstitutional on its face because it fails to make, it fails to require a special need for the testing program. Where do I read that in there? Okay. It's there. I'm sorry. I apologize. It is in there. And it's unsupported by a special need. But it's just to the extent that it is. So you read that as saying, because you think it, the policy is unsupported by a special need as a whole. That's what it does. I think the policy is unsupported by a special need as a whole, yes, Your Honor. Okay. And specifically, it's unsupported by any need applicable to the position for which plaintiff applied. Unless the Court has further questions, I'll cede the rest of my time. Anything else? I don't think so. Thank you. Ms. Stork, are you sure? So that was the last thing I was going to address. And I decided to wait until wrapping up at what the actual declaratory judgment that was crafted by the Court really means. I mean, it really doesn't mean anything. And that cuts both ways. However, we would ask, first of all, that it be reversed for the reasons that I stated. But second of all, as it's written, it doesn't really mean anything because of the language you just pointed out, Judge Reimer, the to-the-extent language. I mean, it doesn't specifically apply to anything, but yet could be read to prohibit everything. And so we wish to have it narrowed. And I understand plaintiff position as articulated to the district court. And I think here their primary concern is about Ms. Lanier. And what they litigated was about Ms. Lanier. And we would ask that this be narrowed in the event you're not going to hold it entirely constitutional to Ms. Lanier's circumstances. Because the way I think the Court did understand plaintiff's counsel's discussion to be requesting only an as-applied statement, I think that's what he was trying to do in referencing back his discussion about this position in his opinion. Because he did reference the fact that she was, you know, the very specifics of her position and that it was safety, secure position. He simply rejected that as a sufficient reason or, you know, substantial reason for the city to do what it did. So I think that's what he was trying to do. But I ask that you, if you're not going to hold it constitutional, narrow it to the circumstances of this case. And I do want to say that we did talk about this. The parties did a bit below in the trial court. And the defendant provided information about that it was a security-sensitive position. And the plaintiff argued back that that was an insufficient reason to employ the policy constitutionally. And so there was argument. It wasn't a great deal of argument because, again, we understood this to be a facial policy. But we have in our reply brief exactly where in the record that is. So it's not entirely devoid of that. And, again, I think the district judge, when he did finally put together the declaratory judgment, which was well after the original summary judgment and after the damages trial, was trying to do that. And that isn't exactly what he ended up doing. So we'd ask at the very least that you narrow it that way. Plaintiff's argument about the unconstitutional conditions, that policy, that simply doesn't apply here. It begs the question. Everyone agrees that pre-employment, post-offer drug testing can be constitutional in certain circumstances. The question are, are these circumstances the kind that rise to that level? And so those cases simply don't apply because they have to do with the constitutionality in the first place. The question is, is this procedure sufficient to pass constitutional muster? So that just doesn't apply. I think plaintiff is suggesting that we have to show, the city would have the burden to demonstrate in order to uphold the policy as to a library page, specific instances of wrongdoing of people on alcohol or drugs, vis-a-vis juveniles, in order to pass a policy that would require the pre-employment, post-offer drug testing. And the Earls case specifically says there's no constitutional quantum of evidence that's required in order to show a problem in order to pass a policy. And I believe it was that case, one of the U.S. Supreme Court cases said, be better to show some evidence than not, but it's not required. There's no constitutional quantum of evidence. And I would suggest particularly in the case of children, we ought not wait until children are harmed by people in employment on alcohol before we're permitted to pass policies which would protect them. So I'd ask that you hold this policy to be constitutional across the board, and in the event that you don't, again, narrow the declaratory judgment to deal only with mislinear circumstances. All right, counsel, thank you both very much for your argument. The matter just argued will be submitted, and the court will stand in recess.
judges: Rymer, Paez, Carney